407 So.2d 770 (1981)
CROWN ZELLERBACH CORPORATION
v.
Wallace E. HECK, et al.
No. 14404.
Court of Appeal of Louisiana, First Circuit.
November 23, 1981.
*771 Richard F. Knight, Bogalusa, for plaintiff.
George P. Bevan and Michael A. Patterson, Baton Rouge, for defendants.
Before COVINGTON, COLE and WATKINS, JJ.
COVINGTON, Judge.
This is an appeal by the defendants, Wallace E. Heck, E. Drew McKinnis and Joseph E. Juban (Heck group), from a judgment in favor of plaintiff, Crown Zellerbach Corporation (Crown), rejecting their demands that they be recognized as the owners of a one-half interest in minerals in and to 90.25 acres of land in Sec. 31, T. 6 S., R. 5 E. and Sec. 6, T. 7 S., R. 5 E. Livingston Parish, Louisiana.[1] We affirm.
This action was brought as a possessory action by Crown against the defendants, with Crown claiming possession of all mineral rights in the subject property, and claiming a disturbance in law of Crown's possession by a letter dated August 18, 1977, asserting ownership of the property and of the mineral rights, sent to Chevron Oil Company by one of the defendants in behalf of himself and the other defendants. The defendants answered, denying any disturbance, although admitting the sending of the letter to Chevron. Then, the defendants converted the action into a petitory action by setting up their own ownership of an undivided one-half interest in the minerals in and to the subject lands by virtue of two cash sales from Roy L. Roshto and Robert H. Bone in 1975, both instruments being recorded in the records of Livingston Parish.
The pretrial order established that on January 5, 1966, Crown sold to the State of Louisiana the subject lands in Sections 31 and 6 above mentioned, reserving the mineral rights to said lands; that on August 29, 1975, and on September 26, 1975, Crown *772 sold to Roshto and Bone, defendants' authors in title, certain lands contiguous to the 90.25 acres previously sold to the State, reserving one-half of the minerals in the Roshto-Bone acquisition; that Roshto and Bone then sold to the defendants the lands of the Roshto-Bone acquisition by deeds dated August 29, 1975, and September 29, 1975. At the trial no testimony was offered by either party; the parties in support of their respective claims offered an area map of the subject property, the act of sale from Crown to the State, the act of sale from Crown to Roshto and Bone, two acts of sale from Roshto and Bone to Heck, McKinnis and Juban, two survey plats, stipulation of facts, and an amended answer by the defendants.
Having converted the action into a petitory action, the Heck group had the burden of proving a valid title good against the world, and the title of Crown does not come into question until the Heck group, plaintiffs in the petitory action, have proved an apparently valid title in themselves. LSA-C.C.P. arts. 3651, 3653; Pure Oil Company v. Skinner, 294 So.2d 797 (La. 1974); Garrett v. Ernest, 369 So.2d 713 (La. App. 1 Cir. 1979), writ denied, 371 So.2d 1340 (La.1979); Green v. Cenac, 336 So.2d 349 (La.App. 1 Cir. 1976), writ denied, 339 So.2d 20 (La.1976).
There is no evidence in the record of an unbroken chain of valid transfers to the Heck group from the sovereign or an ancestor in title common with the opponent (Crown), or that the group acquired the property by acquisitive prescription (of ten or thirty years). Consequently, we hold that the Heck group, having failed to establish a valid title, failed to sustain their burden of proof, and the judgment rejecting their claim of ownership was proper. Their petitory action was properly dismissed. See Rivet v. Dugas, 377 So.2d 489 (La.App. 4 Cir. 1979).
The particular mineral rights to which defendants assert ownership were reserved by Crown in the deed from Crown to the State of Louisiana, dated January 5, 1966. In this conveyance, Crown sold to the State several parcels of land, including land where is now located the interchange of Interstate Highway 12 and Louisiana State Route 63. The land sold in that deed was designated as certain numbered parcels, each of which was described by a metes and bounds survey description, and further identified by reference to the survey plat prepared for the Interstate Highway 12 project. Crown reserved all of the mineral rights in and to the 90 acre tract described in that deed, which mineral reservation is perpetual and imprescriptible so long as the State owns that tract of land. See LSA-R.S. 31:149.[2]
According to LSA-R.S. 31:149-152, if land is acquired by the State through any means, except tax adjudication, and the deed transferring the land to the State reserved a mineral servitude or other mineral right subject to prescription, the mineral interest remains in effect in perpetuity, and the normal rules of prescription do not apply so long as the title to the land remains in the State. Essentially, if in the act of acquisition by the State, mineral rights normally subject to prescription are reserved to the landowner, prescription does not run so long as the land remains in the hands of the State. See Comment under LSA-R.S. 31:149.
In August and September of 1975, Crown sold to Roshto and Bone, the Heck group's vendors, lands contiguous on the north and south to the interchange tract. In those sales, Crown reserved one-half of all minerals in and to the lands transferred therein. The Heck group then acquired from Roshto and Bone all of their interests in and to said lands. The defendants contend that they acquired from their vendors not only the lands described in the deeds to Roshto and Bone and one-half the minerals therein, but also the mineral rights reserved by Crown in the 1966 sale of the 90 acres to the State.
*773 The primary basis for the appellants' claim and their appeal is LSA-R.S. 9:2971.[3] This 1956 law deals with transactions affecting lands described as fronting on any kind of right of way, and establishes a conclusive presumption that such a transaction includes all of the transferor's interest in and under the right of way unless expressly excluded. The statute conclusively presumes "that any transfer... affecting land described as fronting on or bounded by a waterway, canal, highway, road, street, alley, railroad or other right of way, shall be held ... to include all of grantor's interest in and under such waterway,... highway, road ... or other right way...." We emphasize the words "described as fronting on or bounded by," because the deeds from Crown to Roshto and Bone do not "describe" the lands therein transferred as "fronting on or bounded by" the highway or right of way. The descriptions contained in those deeds are survey proces verbals, and the courses and distances necessary to delineate exactly the particular tracts are given therein. While there is mention of the margins of the highway, such reference is unnecessary to a legally sufficient description, and was made simply as a reference to correlate these survey descriptions with those of the highway. There is a difference between a sale of land which happens to front on a highway, such as this, and a sale wherein the description is accomplished only by reference to a highway or other right of way as one of the boundaries necessary to locate the property.
Moreover, the statute lists as boundaries "a waterway, canal, highway, road, street, alley, railroad or other right of way," indicating its applicability to boundaries which are "rights of way," rather than fee or perfect ownership. The State does not have a right of way over the property on which the interchange is located; the State owns the land, with a reservation of the minerals to its vendor, Crown. The reason for the statute's applicability being properly limited to "right of way" boundaries can be found from its purpose. The legislature considered that, in some sales per aversionem, or boundary to boundary descriptions, there were instances where a vendor did not specifically transfer all the property he intended to transfer. For example, a landowner might own a tract of land over which the State or other public body had acquired a road right of way. The landowner might sell the land without having a survey run, by simply describing the land as "bounded on the west by the public road." The parties may believe and have intended that all that the landowner owned be sold, but he may yet (prior to the statute) legally own the fee title to the land over which the road right of way is located, since the sale description might be read to place the western boundary line as the east margin of the public road. To supply this intent and to prevent the possibility of small fractional strips of land indefinitely confusing land titles, the legislature enacted LSA-R.S. 9:2971. There is no reason or purpose for the statute to apply except in situations *774 where a right of way servitude is involved, (and thus a retention of fee ownership by the grantor under the right of way) since in those instances where the State or other public body becomes the owner in fee of the highway, a description using the highway as a boundary transfers all the land that the grantor then owns without any reversionary rights.
We hold that the cited statute is inapplicable to the present set of facts. The statute by its very language does not apply to the conveyances from Crown to Roshto and Bone, and from Roshto-Bone to the Heck group.
As stated above, the property sold by Crown to Roshto and Bone in 1975 was completely described by survey description, from point of beginning through successive courses and distances to closing, delineating the exact boundaries and configuration of the property which was the subject of the sales. We find that Crown intended to convey only the property included within the exact and precise limits of the survey description. The statute speaks only of an express provision in the deed particularly excluding any contiguous interests; we believe that a survey which excludes such contiguous lands satisfies that requirement.
It is a cardinal rule of statutory interpretation that, if it is possible to do so, every part of a statute must be give effect, for the legislature is not presumed to insert superfluous, useless and meaningless words, sentences, phrases, or clauses in its enactments. See Houghton v. Hall, 177 La. 237, 148 So. 37 (1933); Hibernia Nat. Bank in New Orleans v. Louisiana Tax Commission, 195 La. 43, 196 So. 15 (1940).
In the case of State v. Texas Co., 205 La. 517, 17 So.2d 569 (1944), our Supreme Court was called upon to interpret certain provisions of Act No. 52 of Ex.Sess. 1921 dealing with the sale of public lands belonging to the State of Louisiana. The issue was whether the lands authorized to be sold included the bottoms of navigable waters. The Courts stated the following:
"The assumption is that all parts of a statuteeach word, each phrase, each clausewere intended by the Legislature to have some meaning; none was inserted by mere inadvertence. Furthermore, all of the statutory provisions are to be given effect wherever possible. With this in mind, we observe that the Legislature in Section 1 of the Act of 1921, after referring to all vacant and unappropriated public lands of the state, used the words `now existing or hereafter acquired by accretion or otherwise.' This reference to acquisition by accretion is of much significance. If the intention had been as defendants contend, that the preserve should be composed of all lands within its general area, including water bottoms, there would have been no reason for the specific inclusion of accretive land. The preserve, if all embracing, naturally would contain that property. The clause `acquired by accretion' can be given a definite meaning and made to function; but to adopt the construction of the statute for which defendants contend would render that clause meaningless and mere surplusage." (Emphasis by the Court.)
In the case of Louisiana Television Broadcasting Corp. v. Total C.A.T.V., 341 So.2d 1183 (La.App. 1 Cir. 1976), writ refused, 343 So.2d 1076 (La.1977), this Court stated that:
"Every word in a statute must be given meaning, if possible; no word, clause, phrase or sentence of a statute shall be deemed meaningless or surplusage if a construction can be legitimately found which would give force to and preserve every word of the statute."
There was at issue the interpretation of an ordinance dealing with cable television connections which provided:
"Grantee shall make connections to subscriber outlets with switching capability to permit non-cable television reception should the subscriber desire and request such reception...."
The question was whether the cable franchisee was required to install switching capability in every case or only upon the request of the subscriber. This Court found *775 that, if the provisions of the ordinance were intended to be compulsory, inclusion of the conditional phrase "should the subscriber desire and request" would be completely unnecessary and surplusage. Consequently, the Court held that the ordinance required the installation of the switching capability only upon request of the subscriber.
We believe that the proper interpretation of LSA-R.S. 9:2971 requires that the phrase "described as" be given meaning and effect. A sale of land per aversionem transfers to the purchaser only the land included within the designated boundaries, unless the property is described as fronting on or bounded by a right of way. See State, Department of Highways v. Tucker, 247 La. 188, 170 So.2d 371 (1969). Thus, we hold that only transfers which describe the property transferred as fronting on or bounded by a right of way are subject to the conclusive presumption. In the instant case, the conveyance to Roshto-Bone by Crown did not "describe" the conveyed property as fronting on or bounded by a right of way.
For the foregoing reasons, we affirm the judgment of the district court rejecting the demands of the plaintiffs in the petitory action, Wallace E. Heck, E. Drew McKinnis and Joseph E. Juban, to be recognized as owners of the immovable property or of any mineral interests therein, more fully described as:
"90.25 acres of land, more or less, being all that part of the following described property which is located in Section 31, T6S, R5E and Section 6, T7S, R5E, Livingston Parish, Louisiana:
PARCEL NO. 13-1: Commence at a point which marks the Southeast corner of Section 2, Township 7 South, Range 4 East, Livingston Parish Louisiana, and proceed North 00° 30' 10" West along the line between Section 2 and Section 1 a distance of 5,116.53 feet to the true point of beginning; from said point of beginning proceed South 89° 07' 14" West a distance of 1,067.37 feet to a point; thence along the arc of a curve to the right (the radius of which curve is 114,741.56 feet and the long chord of which bears South 89%A 10' 59" West, 247.21 feet) a distance of 247.21 feet to a point and corner; thence North 01° 54' 05" West a distance of 300.06 feet to a point and corner; thence proceed along the arc of a curve to the left (the radius of which curve is 114,441.56 feet and the long chord of which bears North 89° 11' 04" East 252.56 feet) a distance of 252.56 feet to a point; thence continue North 89° 07' 14" East a distance of 1,066.90 feet to a point; thence continue North 89° 07' 14" East a distance of 4,027.46 feet to a point on Vendor's boundary line common with the property of Johnnie W. Watts et al and corner; thence South 00° 30' 04" East a distance of 126.78 feet to a point and corner; thence proceed North 89° 21' 23" East a distance of 1,393.19 feet to a point which marks the Northeast corner of Section 1, Township 7 South, Range 4 East, Livingston Parish, Louisiana; thence proceed North 00° 30' 04" West a distance of 132.51 feet to a point and corner; thence proceed North 89° 07' 14" East a distance of 184.08 feet to a point; thence proceed along the arc of a curve to the left (the radius of which curve is 1,095.92 feet and the long chord of which bears North 61° 59' 10" East, 502.54 feet) a distance of 507.05 feet to a point; thence North 36° 59' 00" East a distance of 143.44 feet to a point; thence North 45° 05' 56" East a distance of 148.12 feet to a point; thence North 33° 28' 53" East a distance of 324.03 feet to a point; proceed along the arc of a curve to the right (the radius of which curve is 466.00 feet and the long chord of which bears North 53° 51' 24" East 324.49 feet) a distance of 331.43 feet to a point; thence North 74° 13' 55" East a distance of 101.82 feet to a point; thence North 37° 27' 13" East a distance of 119.74 feet to a point; thence North 89° 13' 53" East a distance of 25.17 feet to a point on the existing westerly right of way line of State Route La. 63 and corner; thence South 00° 46' 04" East along said right of way line a distance of 70.56 feet to a point; thence South 00° 21' 52" East a distance of 101.23 feet to a point; thence South 00° 34' 38" East a distance of 500.26 feet to a point; *776 thence South 02° 24' 36" East a distance of 200.00 feet to a point; thence South 04° 24' 52" East a distance of 200.12 feet to a point; thence South 06° 48' 16" East a distance of 305.16 feet to a point; thence South 08° 33' 39" East a distance of 997.84 feet to a point; thence proceed North 83° 27' 56" West a distance of 199.11 feet to a point; thence proceed along the arc of a curve of the right (the radius of which curve is 450.00 feet and the long chord of which bears North 49° 03' 34" West, 508.55 feet) a distance of 540.45 feet to a point; thence North 14° 39' 12" West a distance of 210.37 feet to a point; thence proceed along the arc of a curve to the left (the radius of which curve is 666.20 feet and the long chord of which bears North 32° 11' 33" West 401.53 feet) a distance of 407.87 feet to a point; thence North 63° 56' 58" West a distance of 47.22 feet to a point; thence North 60° 42' 01" West a distance of 219.48 feet to a point; thence South 89° 07' 14" West a distance of 585.34 feet to a point; thence continue South 89° 07' 14" West a distance of 5,418.25 feet to the point of beginning and containing 80.143 acres.
PARCEL NO. 13-1-A: Commence at the intersection of Vendor's north boundary line with the existing westerly right of way line of State Route La. 63 and proceed South 00° 46' 23" East along said right of way line a distance of 25.94 feet to the true point of beginning; from said point of beginning continue South 00° 46' 04" East along said right of way line a distance of 131.51 feet to a point and corner; thence South 89° 13' 53" West a distance of 25.17 feet to a point; thence North 10° 04' 02" East a distance of 133.90 feet to the point of beginning and containing 0.038 of an acre.
"PARCEL NO. 16-1: Commence at point which marks the Southeast corner of Section 6, Township 7 South, Range 5 East, Livingston Parish, Louisiana, and proceed North 00° 30' 30" West a distance of 5,307.07 feet to a point which marks the Northeast corner of said Section 6; thence continue North 00° 16' 47" West along the line between Section 31 and Section 32, Township 6 South, Range 5 East, Livingston Parish, Louisiana, a distance of 29.83 feet to a point which marks Highway Survey Station 137 + 71.58 on the centerline of the aforementioned highway project and corner; thence proceed South 89° 07' 14" West along the said project centerline a distance of 1,630.54 feet to the true point of beginning; from said point of beginning proceed South 04° 40' 56" East a distance of 101.14 feet to a point; thence South 05° 18' 07" East a distance of 49.23 feet to a point and corner; thence South 89° 07' 14" West a distance of 734.45 feet to a point; thence proceed along the arc of a curve to the left (the radius of which curve is 1,095.92 feet and the long chord of which bears South 48° 43' 26" West, 978.57 feet) a distance of 1,014.40 feet to a point; thence South 22° 12' 26" West a distance of 65.93 feet to a point; thence proceed along the arc of a curve to the right (the radius of which curve is 466.00 feet and the long chord of which bears South 44° 22' 15" West, 351.60 feet) a distance of 360.53 feet to a point; thence South 66° 32' 05" West a distance of 101.82 feet to a point; thence South 29° 45' 22" West a distance of 119.75 feet to a point; thence South 81° 32' 04" West a distance of 25.42 feet to a point on the existing easterly right of way line of State Route La. 63 and corner; thence North 08° 33' 39" West along said right of way line a distance of 1,055.56 feet to a point; thence continue North 06° 51' 12" West a distance of 294.60 feet to a point; thence continue North 04° 24' 52" West a distance of 200.12 feet to a point; thence North 02° 24' 36" West a distance of 200.00 feet to a point; thence North 00° 34' 38" West a distance of 500.26 feet to a point; thence North 00° 19' 45" West a distance of 98.37 feet to a point; thence North 00° 45' 59" West a distance of 12.93 feet to a point, said point being 49 feet East of Highway Survey Station 61 + 10.87 on the adopted centerline of State Route La. 63; the controlled access hereinafter stated shall extend North 00° 46' 06" West along the existing east right of way line of said State Route La. 63 a distance of 58.42 feet to a point and end; from the end of the North 00° 45' 59" West 12.93 foot *777 line proceed South 75° 46' 06" East a distance of 193.35 feet to a point; thence proceed along the arc of a curve to the right (the radius of which curve is 450.00 feet and the long chord of which bears South 47° 33' 15" East, 425.49 feet) a distance of 443.18 feet to a point; thence South 19° 20' 24" East a distance of 208.39 feet to a point; thence proceed along the arc of a curve to the left (the radius of which curve is 666.20 feet and the long chord of which bears South 46° 04' 48" East, 599.50 feet) a distance of 621.82 feet to a point; thence North 89° 07' 14" East a distance of 1,113.26 feet to a point and corner; thence proceed South 04° 40' 56" East a distance of 150.33 feet to the point of beginning and containing 41.313 acres.
"PARCEL NO. 16-1-A: Commence at the end of the South 08° 33' 39" East 1,055.56 foot line of the aforementioned Parcel No. 16-1, also the true point of beginning; from said point of beginning continue South 08° 33' 39" East along the east right of way line of State Route La. 63 a distance of 144.45 feet to a point; thence proceed North 01° 25' 16" East a distance of 146.63 feet to a point; thence South 81° 32' 04" West a distance of 25.42 feet to the point of beginning and containing 0.042 of an acre.
"PARCEL NO. 18-1: Commence at a point which marks the Southeast corner of Section 6, Township 7 South, Range 5 East, Livingston Parish, Louisiana, and proceed North 00° 30' 30" West along the line between said Section 6 and Section 5 a distance of 5,186.89 feet to the true point of beginning; from said point of beginning proceed South 89° 07' 14" West a distance of 1,578.82 feet to a point and corner; thence North 05° 18' 07" West a distance of 51.92 feet to a point; thence North 04° 41' 38" West a distance 248.78 feet to a point and corner; thence proceed North 89° 07' 14" East a distance of 1,602.03 feet to a point on the line between Section 31 and Section 32, Township 6 South, Range 5 East Livingston Parish, Louisiana; thence continue North 89° 07' 14" East a distance of 1,547.67 feet to a point; thence proceed along the arc of a curve to the left (the radius of which curve is 11,309.16 feet and the long chord of which bears North 86° 48' 31" East, 912.44 feet) a distance of 912.68 feet to a point; thence North 84° 29' 48" East a distance of 249.64 feet to a point on Vendor's boundary line common with the property of Maudie Simeon Duhe Zeigler and corner; thence proceed South 00° 46' 22" East along said boundary line a distance of 242.96 feet to a point and corner; thence North 89° 07' 15" East along the township and section line a distance of 717.78 feet to a point; thence proceed South 84° 29' 48" West a distance of 945.04 feet to a point; thence proceed along the arc of a curve to the right (the radius of which curve is 11,609.28 feet and the long chord of which bears South 86° 48' 31" West, 936.65 feet) a distance of 936.90 feet to a point; thence South 89° 07' 14" West a distance of 1,550.33 feet to the point of beginning and containing 30.102 acres.
"0.28 acre of land being a strip or parcel of land 40 feet by 300 feet, more or less, being that part of a parish road bounded on the East by the parcel of land designated as 18-1 in the foregoing description and on the West by the parcel of land designated as 16-1 in the foregoing description, all in Section 31, T6S, R5E and Section 6, T7S, R5E, Livingston Parish, Louisiana."
Costs are to be paid by appellants.
AFFIRMED.
NOTES
[1] The State was not made a party to this proceeding. Needless to say, the State is unaffected by any adjudication between these parties. Badeaux v. Pitre, 382 So.2d 954 (La. 1980).
[2] Formerly, LSA-R.S. 9:5806.
[3] "It shall be conclusively presumed that any transfer, conveyance, surface lease, mineral lease, mortgage or any other contract or grant affecting land described as fronting on or bounded by a waterway, canal, highway, road, street, alley, railroad or other right of way, shall be held, deemed and construed to include all of grantor's interest in and under such waterway, canal, highway, road, street, alley, railroad, or other right of way, whatever that interest may be, in the absence of any express provision therein particularly excluding the same therefrom; provided, that where the grantor at the time of the transfer or other grant holds as owner the title to the fee of the land situated on both sides thereof and makes a transfer or other grant affecting the land situated on only one side thereof, it shall then be conclusively presumed, in the absence of any express provision therein particularly excluding the same therefrom, that the transfer or other such grant thereof shall include the grantor's interest to the center of such waterway, canal, highway, road, street, alley, railroad, or other right of way; provided further, however, that no then existing valid right of way upon, across or over said property so transferred or conveyed or so presumed to be conveyed and no warranties with respect thereto shall be in any manner or to any extent impaired, prejudiced, or otherwise affected by any of the terms and provisions of this Part or because of the failure of such grantor or transferror to therein make special reference to such right of way or to include or exclude same therefrom."