498 So.2d 144 (1986)
ORMOND COUNTRY CLUB
v.
DORVIN DEVELOPMENTS, INC., and Edwin C. Dorvin, Jr.
No. 86-CA-314.
Court of Appeal of Louisiana, Fifth Circuit.
November 10, 1986.
Writ Denied January 23, 1987.
*145 Wiedemann & Fransen, Fritz Wiedemann, New Orleans, for defendants-appellants.
*146 Chaffe, McCall, Phillips, Toler & Sarpy, John N. Kennedy, Christian T. Brown, New Orleans, for plaintiff-appellee.
Before CHEHARDY, C.J., and GAUDIN and GRISBAUM, JJ.
CHEHARDY, Chief Judge.
The plaintiff, Ormond Country Club, sought an injunction to prevent defendants, Dorvin Development, Inc. and Edward C. Dorvin Jr., from interfering with the country club's use of an area known as "the golf driving range" located within the Ormond Country Club Estates subdivision in St. Charles Parish. From judgment in favor of plaintiff, defendants appeal.
The background of the case, as set forth in the pleadings, is as follows: Edward C. Dorvin Jr. is president and major stockholder of Dorvin Development, Inc. Dorvin Development is the developer of Ormond Country Club Estates, an exclusive subdivision in Destrehan, St. Charles Parish. Ormond Country Club is a not-for-profit corporation that operates a country club within the subdivision, including a clubhouse, tennis courts, a golf course and a golf driving range.
In connection with the expenses incurred in developing Ormond Country Club and its facilities, Mr. Dorvin signed a personal continuing guaranty for a loan to the Club. In November 1977 Dorvin Developments and Ormond Country Club entered into an Act of Exchange, in which Dorvin transferred several large tracts of land to the Club and the Club transferred to Dorvin Development 1,000 shares of Class B stock in Ormond Country Club. In October 1978 these parties entered into another act of exchange, in which Ormond exchanged the land originally received for land in a slightly different configuration.
The land received in the 1978 exchange is the land on which the Club's golf course and tennis courts were built. Adjacent to the land on which the tennis courts are located is an area subject to right-of-way servitudes in favor of a gas pipeline company, an oil company and an electric company. Since approximately 1979 this area has been used by the Club as a golf driving range. It is undisputed that the October 1978 Act of Exchange did not specifically include the land on which the driving range is situated.
In June 1985, Dorvin Development returned all its Class B stock to Ormond Country Club in exchange for the Club's release of Mr. Dorvin from his personal continuing guaranty of the Club's indebtedness. At the time of that agreement, Mr. Dorvin was president and a director of the Club and also president and chief stockholder of Dorvin Development.
On August 9, 1985 Mr. Dorvin, as president of Dorvin Development, wrote to the manager of Ormond Country Club advising that Dorvin had not received the $1.00 rental payment due on June 1, 1985 pursuant to the driving range lease. He also requested confirmation of the insurance coverage required by the lease.
On August 21, 1985 the Club manager responded to Mr. Dorvin's letter, enclosing a check for $1.00. He stated the Club's board of directors had been unable to find a copy of the lease and requested Mr. Dorvin furnish a copy. He advised Mr. Dorvin the Club's insurer would forward confirmation of the insurance coverage.
On August 22, 1985 Mr. Dorvin wrote to the directors of the Club, notifying them to vacate the driving range effective September 24, 1985. On September 27, 1985 the president of the board of directors wrote to Mr. Dorvin advising that the Club was interested in entering into a written lease and/or lease-purchase agreement regarding the driving range as well as some other lots Dorvin Development was offering for sale.
On October 4, 1985 Mr. Dorvin wrote to the Club's board of directors, advising they were not to trespass on the driving range and that any violation of his order would be billed at $115 per day or $3,500 per month. On October 11, 1985 the board of directors responded with a lengthy letter stating, among other things, that although naked ownership of the property was in Dorvin *147 Developments, they had been assured repeatedly by Mr. Dorvin that the Club would continue to enjoy use of the property. The Board advised they were receptive to a "reasonable rental fee lease arrangement" but would not agree to the "punitive figures" set forth in Dorvin's October 9th letter. On October 14, 1985, Mr. Dorvin sent a tractor to plow under all the grass on the driving range.
On October 16, 1985 the Club filed this suit for injunction. Plaintiff alleged that it had an oral 99-year lease of the driving range from Dorvin Development, that Dorvin Development wrongfully attempted to terminate the lease, that Dorvin Development had disrupted the Club's use of the driving range by plowing over the grass and that the plaintiff suffered irreparable injury thereby.
As against Edward C. Dorvin Jr., plaintiff alleged he had breached his fiduciary duty to plaintiff while he was a director of Ormond Country Club by the arrangements he made with Dorvin Development regarding the driving range, because he was at the same time principle stockholder and president of Dorvin Development.
Plaintiff subsequently amended its petition to add alternative causes of action. First, asserting a possessory action, the Club alleged it had possessed the property as owner and should be maintained in that possession. In the second alternative, it alleged it had acquired a servitude over the land by destination of the owner and by use of the driving range for the preceding five years. In the third alternative, plaintiff sought damages of $50,000 for repair of the driving range, loss of use of the area and loss of reputation.
The trial court heard the application for preliminary injunction on the verified pleadings and affidavits only, as allowed by LSA-C.C.P. art. 3609. Rather than specifically granting a preliminary injunction, however, the court rendered judgment decreeing that Ormond Country Club had the right to possession of the property under the provisions of LSA-R.S. 9:2971 (which establishes a conclusive presumption that any transfer of land described as fronting on or bounded by a right-of-way shall be deemed to include all of the grantor's interest in the right-of-way, unless there is an express provision excluding the transfer of that interest). The defendants have appealed devolutively.
The pleadings in the record and the parties' briefs on this appeal raise numerous issues. There has been no trial on the merits of the permanent injunction, however, and the evidence presented at the hearing on the preliminary injunction is wholly inadequate to address all the issues raised.
Although a hearing on summary proceedings to obtain a preliminary injunction may touch on or tentatively decide merit issues, the principal demand is to be determined on its merits only after a full trial under ordinary process, unless the parties have expressly agreed to submit the case for final decision at the hearing on the rule for preliminary injunction. Smith v. West Virginia Oil & Gas Co., 373 So.2d 488 (La. 1979). The parties here did not stipulate that the hearing on the preliminary injunction would take the place of a full trial. Accordingly, we cannot decide all the questions on this appeal and we limit our opinion to the issues pertinent to the preliminary injunction.
First we address a jurisdictional question. Ormond previously filed a motion to dismiss the appeal, which this court denied. Now Ormond reurges the motion, arguing that the judgment on appeal, as a preliminary injunction, is interlocutory and therefore not appealable. Ordinarily an interlocutory judgment may be appealed only if it may cause irreparable injury. LSA-C. C.P. art. 2083. An exception to this rule is LSA-C.C.P. art. 3612, which specifically allows an appeal to be taken "as a matter of right" from a judgment relating to a preliminary injunction. Thus this appeal was properly taken.
Regarding the merits of the judgment, we find first that the judgment is invalid as an injunction because it fails to *148 describe the act or acts being enjoined. LSA-C.C.P. art. 3605 states, "An order granting either a preliminary or a final injunction * * * shall describe in reasonable detail, and not by mere reference to the petition or other documents, the act or acts sought to be restrained. * * *" Therefore a judgment purporting to grant an injunction but failing to describe the prohibited acts with specificity is void. Lenfants Caterers v. Firemen's Charitable, 386 So.2d 1053 (La.App. 4 Cir.1980); Allied Nav. Co., Inc. v. International Org. of M., M. & P., 272 So.2d 23 (La.App. 4 Cir.1973), writ denied 275 So.2d 781.
The judgment here merely renders judgment in favor of the plaintiff and against the defendants "recognizing plaintiff's right to the possession of the property as per Attachment A." It neither specifies the acts enjoined nor describes the property involved. ("Attachment A" is a photocopy of a portion of a surveyor's plat which contains no directional references, no locational clues nor any other method by which the property could be identified.) Obviously the judgment is void as an injunction.
In its reasons for judgment, the trial court specifically avoided determining whether there was a lease by deciding that plaintiff had title to the driving range, under R.S. 9:2971, because the acts of exchange from Dorvin Development to the Club contained no reservation of Dorvin's rights to the land under the servitude rights-of-way. (Dorvin Development had transferred to the Club the land on which the Club's golf course and tennis court were eventually built.)
R.S. 9:2971 states:
"It shall be conclusively presumed that any transfer, conveyance, surface lease, mineral lease, mortgage or any other contract or grant affecting land described as fronting on or bounded by a waterway, canal, highway, road, street, alley, railroad or other right of way, shall be held, deemed and construed to include all of grantor's interest in and under such waterway, canal, highway, road, street, alley, railroad, or other right of way, whatever that interest may be, in the absence of any express provision therein particularly excluding the same therefrom; provided, that where the grantor at the time of the transfer or other grant holds as owner the title to the fee of the land situated on both sides thereof and makes a transfer or other grant affecting the land situated on only one side thereof, it shall then be conclusively presumed, in the absence of any express provision therein particularly excluding the same therefrom, that the transfer or other such grant thereof shall include the grantor's interest to the center of such waterway, canal, highway, road, street, alley, railroad, or other right of way; provided further, however, that no then existing valid right of way upon, across, or over said property so transferred or conveyed or so presumed to be conveyed and no warranties with respect thereto shall be in any manner or to any extent impaired, prejudiced, or otherwise affected by any of the terms and provisions of this Part or because of the failure of such grantor or transferror to therein make special reference to such right of way or to include or exclude same therefrom." (Emphasis added.)
The relevant portion of the Act of Exchange dated October 25, 1978 describes the property transferred as follows:
"ORMOND COUNTRY CLUB ESTATES TENNIS COURT SITE
"A CERTAIN TRACT OF LAND, together with all the buildings and improvements thereon, and all of the rights, ways, privileges, servitudes, appurtenances and advantages thereunto belonging or in anywise appertaining, situated in the Parish of St. Charles, State of Louisiana, in that part thereof known as Ormond Country Club Estates, and according to a survey of J.J. Krebs & Sons, Inc. dated August 30, 1978, a print of which survey is annexed hereto and made part hereof, said tract is more fully described as follows:

*149 "From the `Point of Beginning', being the intersection of the northernmost right-of-way line of Ormond Boulevard and the easternmost right-of-way line of the right-of-way for United Gas Pipeline, Shell Oil, and Louisiana Power and Light Company, run N24°11'50"W, 665.78'; thence N47°27'09"E, 179.11' to the westernmost right-of-way line of Villere Drive;
thence, S24°11'50"E along said right-of-way line 788.37';
thence, S33°01'19"W, 17.77' to the northernmost right-of-way line of Ormond Boulevard;
thence, northwesterly along the arc of a curve to the left (R = 1687.67) 172.68' to the `Point of Beginning' containing in all 2.862 acres, more or less."
In Crown Zellerbach Corp. v. Heck, 407 So.2d 770 (La.App. 1 Cir.1981), the court interpreted the statute's use of the phrase, "described as fronting on or bounded by." The court noted that the property descriptions therein were survey proces verbals, containing the courses and distances necessary to delineate exactly the particular tracts:
"While there is mention of the margins of the highway, such reference is unnecessary to a legally sufficient description, and was made simply as a reference to correlate these survey descriptions with those of the highway. There is a difference between a sale of land which happens to front on a highway, such as this, and a sale wherein the description is accomplished only by reference to a highway or other right of way as one of the boundaries necessary to locate the property.
* * * * * *
"As stated above, the property sold by Crown to Roshto and Bone in 1975 was completely described by survey description, from point of beginning through successive courses and distances to closing, delineating the exact boundaries and configuration of the property which was the subject of the sales. We find that Crown intended to convey only the property included within the exact and precise limits of the survey description. The statute speaks only of an express provision in the deed particularly excluding any contiguous interests; we believe that a survey which excludes such contiguous lands satisfies that requirement.
* * * * * *
"Thus, we hold that only transfers which describe the property transferred as fronting on or bounded by a right of way are subject to the conclusive presumption. In the instant case, the conveyance to Roshto-Bone by Crown did not `describe' the conveyed property as fronting on or bounded by a right of way." 407 So.2d 770 at 773, 774, 775.
We find the First Circuit's reasoning in the Crown Zellerbach case decisive. Here, as in that case, the description of the property transferred to the Club is by survey proces verbals, delineating precisely the limits of the property transferred. Nowhere is the property described as "fronting on" or "bounded by" the rights-of-way servitudes. The act describes the course of one boundary as being along "the easternmost right-of-way line of the right-of-way for United Gas Pipeline, Shell Oil, and Louisiana Power and Light Company." We conclude the trial court erred in applying the conclusive presumption of R.S. 9:2971 to the transfer in this case.
We are required by LSA-C.C.P. art. 2164 to "render any judgment which is just, legal and proper upon the record on appeal." Therefore we must review the pleadings and affidavits to determine whether plaintiff proved its right to a preliminary injunction.
A preliminary injunction is a procedural device interlocutory in nature designed to preserve the existing status pending a trial of the issues on the merits of the case. Smith v. West Virginia Oil & Gas Co., supra. The issuance of a preliminary injunction addresses itself to the sound discretion of the trial court, but that discretion is reviewable if erroneously exercised. Id.
*150 To obtain a preliminary injunction under C.C.P. art. 3601, the moving party must show he will suffer irreparable injury, loss or damage if the court fails to issue the injunction, that he or she is entitled to the relief sought, and must make a prima facie showing that he or she will prevail on the merits of the case. Lamb v. Quality Inspection Serv., Inc., 398 So.2d 643 (La. App. 3 Cir.1981).
On the other hand, a party seeking a preliminary injunction under LSA-C.C.P. art. 3663 (as an ancillary remedy to a possessory action) is not required to prove irreparable injury. Ciolino v. Castiglia, 446 So.2d 1366 (La.App. 1 Cir.1984).
Whether the injunction is sought under C.C.P. art. 3601 or C.C.P. art. 3663, however, the plaintiff cannot obtain a preliminary injunction without making a prima facie case that he will prevail on the merits. Injunctive relief should not be granted unless the facts supporting its justification are clear and convincing, and rules governing the use of injunctive process are strictly construed. Freeman v. Treen, 442 So.2d 757 (La.App. 1 Cir.1983).
The Club alleged that "defendant's actions are depriving the Club members the use and enjoyment of the driving range as well as its reputation and the ability to attract new membership. A driving range is an integral part of a country club which provides golf facilities. It is impractical, if not impossible, for the Club to relocate the driving range."
In support of these allegations the Club offered affidavits of various members of its board of directors. These affidavits were to the effect that the affiants had all been under the impression that the Club owned the driving range; that after they discovered the Club did not own the property, they believed Mr. Dorvin had promised the Club a 99-year lease of the land; that they believed Mr. Dorvin had given the oral lease in exchange for the Club's agreement to relieve him of his personal continuing guaranty of the Club's indebtedness; and that they would not have voted to release Mr. Dorvin of his personal guaranty had they known beforehand the continued use of the driving range by the Club was at issue.
The golf professional employed by the Club stated in his affidavit that the driving range is "an integral and valuable part" of the Club's golf program; that the range is the "only area approximating fairway play available to the Club's members for practice and instructions"; that the availability of a driving range "contributes greatly to the Club's ability to draw new members" and to "hold onto its existing members and its teaching professionals"; that the Club would have to redesign its golf course if it were forced to relocate the driving range, at considerable expense and disruption of service and income. He also stated that his own compensation under his contract with the Club was tied to the income produced by the driving range.
The affidavit of another board member stated he had been advised by Mr. Dorvin that the latter intended to "retaliate against the Club if the Board voted to fill one of its vacancies with a former Advisory Council member" of whom Mr. Dorvin disapproved and that Dorvin's letter ordering the Club to vacate the driving range was sent after the disfavored individual had been elected by the board.
In opposition, defendants provided affidavits by a former Club board member, by the former manager of the Club and by Mr. Dorvin. The former board member stated he was aware that the land used for the driving range was not owned by the Club and that he was unaware of any lease agreement between Dorvin Developments and the Club. The former Club manager stated she was aware the range was not owned by the Club, that she knew it belonged to Dorvin Developments, and that she knew it had been leased to the Club by written lease renewable on a month-to-month basis and had been present when the lease was executed.
*151 Mr. Dorvin stated that he never made an oral 99-year lease to the Club; that the consideration for the release of his guaranty on the Club's indebtedness was his transfer of his stock in the Club to the Club rather than a lease of the driving range; that the property was governed by a written lease in effect from June 1, 1979 through June 30, 1984 and renewed on a month-to-month basis; that he was never authorized by the Dorvin Development board of directors to enter into an oral lease or an oral amendment of the written lease.
Based on the record as it now stands, including the submitted affidavits, and in the absence of a written lease, we find the Club has not made a prima facie showing that it will prevail on the merits.
Regarding the alternative claim that the Club is entitled to possession of the property, the Club is a precarious possessor as defined by LSA-C.C. arts. 3427, 3429, and 3437. A precarious possessor may not bring the possessory action against the person for whom he possesses. LSA-C.C. art. 3440. With respect to the Club's alternative plea that a servitude had been established by destination of the owner, the Club presented no facts to support this claim.
For the foregoing reasons, we conclude the district court abused its discretion in granting a preliminary injunction in favor of the plaintiff and in finding the plaintiff entitled to possession of the property. Accordingly, the judgment of the district court is reversed and this case is remanded for trial on the merits. The Club can then attempt to show that a formal or oral lease was entered into or that it is otherwise entitled to use of the driving range, while defendants can attempt to prove that they are in fact the title owners of the driving range property and therefore entitled to peaceful possession. (The record does not now contain a written lease or documentary proof of ownership of the driving range.) Costs of this appeal are to be paid by plaintiff-appellee.
REVERSED AND REMANDED.