BOWES, Judge.
The New Orleans Aviation Board (hereinafter “NOAB”), one of the defendants herein, appeals an order of the trial court granting a preliminary injunction in favor of appellees, City of Kenner (hereinafter “Kenner”), Superior Automobile Association, Inc. (hereinafter “Superior”), and Enterprise Leasing Company of New Orleans (hereinafter “Enterprise”), restraining, enjoining and prohibiting the New Orleans Aviation Board (NOAB) from enforcing the Permit Agreement and prohibiting the Aviation Board from denying the off-site RACs access to Airport premises, all as set out more fully hereinafter. For the following reasons we affirm.
PROCEDURAL HISTORY
On September 5, 1991, the City of Ken-ner filed a pleading styled “Petition For Declaratory Judgment, Permanent Injunction and Return of Taxes Unlawfully Collected.” Kenner averred that a “Privilege Fee,” imposed by NOAB upon rental car companies not located on the airport prem *222 ises, is, in fact, an unconstitutional, illegal, invalid and unenforceable tax and, as such, violates the Home Rule Charter of Kenner, specifically the authority of Kenner to impose taxes on businesses located within the City. In the petition Kenner sought and obtained a temporary restraining order enjoining NOAB from enforcing the “privilege fee.” A date was set for the hearing to determine whether a preliminary injunction should issue.
On September 6, 1991, Superior filed a pleading which initially generally tracked the Kenner petition, requesting the same relief of a declaratory judgment and appropriate restraining orders. Superior further alleged that the fee was in reality an illegal occupational license tax, or alternatively an illegal sales tax or an illegal motor vehicle license tax. Several other constitutional issues were raised, as well as violations of certain ordinances of the City of New Orleans and of LSA-R.S. 2:605 (infra).
On September 10, 1991, Enterprise intervened in the Superior action, adopting that petition and the allegations contained therein. On that same date, the Kenner suit and the Superior suit were consolidated for trial. The temporary restraining order was continued until September 20, 1991, when the hearing on the motion for a preliminary injunction was held. An extension of time to file pleadings was granted to NOAB. In due course, following a hearing at which all parties agreed to submit many (but not all) of the factual issues by affidavit, the trial court issued an order granting the preliminary injunction in favor of plaintiffs and against NOAB and the City of New Orleans. Only NOAB appeals presently from that judgment.
FACTS
Both Enterprise and Superior are engaged in the rental car business in the Greater New Orleans area, and both maintain offices in Kenner which are not located on the premises of the New Orleans International Airport. Both pick up customers at the airport. There are minor differences between Enterprise and Superior. Superi- or, doing business as Thrifty Rent-A-Car, operates courtesy vans which shuttle customers back and forth to the airport. Enterprise derives a percentage of its business from customers at the airport although it does not have a courtesy shuttle.
On October 5, 1989, the NOAB adopted a resolution requiring off-site rental car companies (“off-site RACs”) to pay a “privilege fee” for the “privilege” of “access” to the airport to “conduct business” at the airport”, equal to seven percent (7%) of “gross business receipts” as that term is defined in the resolution. Superior and Enterprise are two off-site RACs; there are several others located in the City of Kenner, and many more in the Greater New Orleans area. There are other rental car companies that are located “on-site,” or at the airport. These on-site companies pay a rental equal to ten percent of their gross receipts, to the NOAB.
Acting pursuant to said Resolution, the New Orleans City Council on April 18, 1991, adopted Ordinance No. 14486 MCS, requiring off-site RACs which use the airport, presumably to pick up and drop off customers, to pay a fee of seven percent (7%) of “gross business receipts” to the NOAB. Thereafter, on June 20, 1991, the NOAB, acting through its attorneys, presented Enterprise and certain other off-site RACs with a 17 page document entitled:
NEW ORLEANS AVIATION BOARD OFF-AIRPORT CAR RENTAL COMPANY USE AND PERMIT AGREEMENT NEW ORLEANS INTERNATIONAL AIRPORT
The agreement sought, among other things, to implement the resolutions of NOAB and the City Council, imposing the seven percent (7%) access fee.
Thereafter, the Legislature passed Act No. 1064 of 1991, now codified as LSA-R.S. 2:605(D), which permits an airport authority to impose fees, charges, rentals, rates, or conditions upon nontenant auto rental users, but limits the maximum rate to 5% of gross business revenues, to be assessed only after formal public hearings.
*223 On August 13, 1991, NOAB forwarded to the RACs a document styled: “First Amendment to New Orleans Aviation Board Off-Airport Car Rental Company Use and Permit Agreement New Orleans International Airport” (PERMIT AMENDMENT). The amendment changed the amount of the imposed “Privilege Fee” from 7% to 5% of their gross business receipts apparently with the intent of complying with the newly enacted LSA-R.S. 2:605(D), supra. The enabling ordinance of the New Orleans City Council was not changed to reflect the 5% maximum fee.
The present lawsuits were subsequently filed.
ANALYSIS
A preliminary injunction is a procedural device interlocutory in nature designed to preserve the existing status pending a trial on the issues of the merits of the case. Smith v. West Virginia Oil & Gas Co., 373 So.2d 488 (La.1979); Ormond Country Club v. Dorvin Developments, 498 So.2d 144 (La.App. 5 Cir.1986), writ denied, 500 So.2d 423 (La.1987).
To obtain injunctive relief the applicant usually must establish that irreparable injury, loss, or damage may result if the requested relief is not granted. La. C.C.P. art. 3601. Preliminary injunctions may be entered prior to trial on the merits in order to protect the applicant from irreparable injury during the pendency of the action.
South Cent. Bell Telephone v. PSC, 555 So.2d 1370 (La.1990); Smith v. Lee, 444 So.2d 696 (La.App. 5 Cir.1984).
“Even though the hearing on the summary proceedings to obtain the preliminary injunction may touch upon or tentatively decide merit issues, the principal demand is determined on its merits only after a full trial under ordinary process.” In the Matter of the Liquidation of Kenilworth Insurance Co., 428 So.2d 1187, writ denied, 434 So.2d 1095 (La.1983).
“The applicant for a preliminary injunction need make only a prima facie showing that he will prevail on the merits. The preliminary injunction requires less proof than is required in an ordinary proceeding for permanent injunction.” Federal Nat. Mortg. Ass’n v. O’Donnell, 446 So.2d 395 (La.App. 5 Cir.1984); Smith, supra.
“The issuance of a preliminary injunction addresses itself to the sound discretion of the trial court, but that discretion is reviewable if erroneously exercised.” Ormond, supra; Federal Nat. Mortg. Ass’n, supra.
LSA-R.S. 2:605(D) states, in pertinent part:
(1) Notwithstanding any other provisions of law to the contrary, fees, charges, rates, rentals, or conditions imposed on nontenant, auto rental users of each airport in this state, including but not limited to the New Orleans International Airport must be fair, reasonable, and not unjustly discriminatory. Such fees, charges, rates, rentals, or conditions may not have the effect of substantially lessening competition or tend to create a monopoly in any line of commerce, must be based upon the cost to the airport of the particular facilities or services used by such nontenant, auto rental user. No fee, charge, rate, or rental imposed upon any nontenant, auto rental user. No fee, charge, rate, or rental imposed upon any nontenant, auto rental user pursuant to this Subsection shall have the effect of charging such user an amount in excess of its gross revenues, as that term is defined in concession agreements with tenant concessionaires in the same industry, from customers picked up at the airport times a decimal determined by subtracting five one-hundredths from the percentage rate charged tenants pursuant to such concession agreements when that percentage rate is expressed as a decimal.
(2) Formal public hearings shall be required providing an opportunity for testimony from any interested party prior to the imposition of any fee, charge, rate, or rental.
(3) In addition, if an airport imposes any fee, charge, rate, or rental on any off-site rental car company which is a user of the airport, the airport shall make a courtesy phone available for each *224 such user, shall provide a customer pickup area for such users, and shall allow each such user to engage in in-airport advertising.
This amendment became effect on July 30, 1991. '
Ordinance No. 14486 of the New Orleans City Council adopted April 18, 1991, which permitted NOAB to initiate privilege fees, contains the following language:
WHEREAS, the Board found that, in order to retire debts incurred for the construction of facilities; pay for the operation and maintenance of Airport facilities; pay for the acquisition and maintenance of Airport equipment; protect the public; preserve order; provide for the public health, safety and welfare; enhance the welfare of the Board; and govern the airport, it is necessary to fix charges, fees and regulations for those persons and corporations who do not have leases or concession contracts with the Board, including off-site RACs businesses, who desire the privilege of picking up passengers and supplying services to passengers picked up at the Airport; and
* * * * * >)<
WHEREAS, in establishing and fixing these charges, fees and regulations, the Board gives due regard to the property and improvements used and the expenses of operation to the Airport Board; and
WHEREAS, the Board found that the charges and fees established and fixed herein for off-site RACs businesses are reasonable compensation from the users to the Board for the use of Airport facilities, and are needed to help defray the cost of Airport facilities and to prevent on-site car rental agencies from moving their operations to off-Airport locations; and
******
WHEREAS, off-site RACs not having said rental car concession contracts may, nevertheless, desire the privilege of supplying rental car services at the Airport and such services involve driving on Airport roads and picking up and dropping off customers at the Airport; and
WHEREAS, the Board found that, in order to protect the public, to provide for public safety, to preserve the good order and peace of the Airport, it was necessary to regulate the entrances to property and buildings of the Board and the way of ingress and egress to and from the same.
The ordinance culminates in an authorization to the NOAB to fix reasonable charges, regulations, control, fees, and standards for off-site RACs, to require the RACs to obtain business permits for airport access, and to require the privilege fee of seven percent (7%) of gross business receipts.
The original “Permit Agreement” of June 20, 1991, prior to the effective date of LSA-R.S. 2:605(D), sent to the off-site RACs, incorporated not only the 7% privilege access fee authorized by the Council, but additionally contained in part:
(1) A requirement that the RAC obtain security for the privilege free in the form of either a $10,000 surety bond, an irrevocable letter of credit in the amount of $10,-000, or a cash deposit or cashier’s check to be held by the Board in its own account— the RAC would not be entitled to interest on this deposit.
(2) A “Hold Harmless Agreement” in which NOAB and the City would be free from liability for any personal damages or damages to property (whether it be property of the RACs or of a third party) from any cause whatsoever; and the RACs would indemnify and hold harmless the NOAB and City from any and all such claims.
(3) A requirement that the permitted RAC maintain Public Liability Insurance in the amount of $500,000.00, as well as comprehensive Automobile Liability Insurance and Worker’s Compensation Insurance. Except for the Compensation Insurance, the City and the NOAB would be named as additional insureds under these policies. This insurance would be primary over any insurance already carried by NOAB.
(4) The permittee RAC would waive any claims against the City and NOAB for loss *225 of anticipated profits claimed in any suit attacking the validity of the Agreement or any part thereof the Board’s Resolution authorizing the implementation of this Agreement or by any judgment or award in any suit or proceeding declaring this Agreement or the Board’s enacting Resolution null, void, or voidable, or delaying the same, or any part hereof, from being carried out.
(5) An agreement, in advance, agreeing to pay for any parking citations issued to cars owed by the RAC, as well as any towing fees, without protest; and any default of this agreement will be considered a breach of contract.
(6) Random inspections of the vehicles for approval as to radio communications, size, engine exhaust, passenger access, license tags, and NOAB permit.
We find that the district court properly enjoined NOAB from seeking to enforce this permit agreement, since plaintiffs have made a prima facie showing that the agreement exceeds the scope of authority granted by the Council Ordinance, as well as the scope of LSA-R.S. 2:605(D). Additionally, we find that plaintiff satisfied the requirement of showing irreparable injury.
The functions of NOAB are to:
1) Administer, operate and maintain all municipal airports and aviation facilities; and
(2) Represent the City in all technical matters pertaining to aeronautics in consultation with state, national, or international aeronautics offices or agencies. Home Rule Charter of the City of New Orleans, 1954, Chapter 7, Section 5-702. The Fourth Circuit found in City of New Orleans v. Gray Line Motor Tours, Inc., 317 So.2d 214 (La.App. 4 Cir.1975); writ denied 322 So.2d 774 (La.1975):
Apparently, M.C.S. Ordinance No. 680, Sections 1 and 2 (Code of the City of New Orleans, Sections 12.1 and 12.2 were adopted to supplement the various statutes, ordinances, and the Home Rule Charter, under all of which the Board is charged with the ‘administration, operation and maintenance’ of the Airport. [1] This ordinance empowers the Board to do nothing more than is specifically approved therein, i.e., ‘ * * * to execute contracts and grant concessions.... ’
As the court found in City of N. O. v. Gray Line, supra:
The rule that city boards created by statute, charter, or ordinance possess only such powers as are expressly granted by law requires no citation of authority. It cannot be argued that the specifically restricted grant of powers in M.C.S. Ordinance No. 680, Section 2, or the ‘ * * * functions of collecting all revenues * * * ’ [from operations, contracts and concessions] delegated by M.C.S. Ordinance 680, Section 8, implies approval by the City Council for the Board to exact the payment of a percentage of gross receipts from providers of non-con *226 tractual ground transportation activities. The rule of strict construction is applicable to an ordinance conferring powers on a municipal board.
We are of the opinion that at least some of the provisions of the Permit Fee Agreement listed hereinabove do not fall within the provision of “... reasonable charges, fees, rules, regulations, standards, contracts, and procedures ...” of the enabling ordinance. Of most concern to us are the arbitrary provisions in the “Hold Harmless” Agreement, the advance waiver of any claims of lost profits, and the advance waiver of the right to contest any parking tickets. In addition to being arbitrary and capricious and discriminatory these clauses do not appear to be reasonably related to or necessary for any purpose of the enabling ordinance. In incorporating these clauses into the agreement, NOAB obviously exceeded the authority given to it by the City Council, which was to set a reasonable fee amidst reasonable regulations, etc., to generate revenue for the airport.
Furthermore, the agreement clearly runs afoul of LSA-R.S. 2:605(D) which only permits imposition of a fee that is “... fair, reasonable, and not unjustly discriminatory.” It does not authorize or permit the type of clauses contained in the above permit fee agreement which go far beyond the imposition of fees and, in our opinion, attempt to enlarge the statute. By including other aspects of the relation between the parties (for example, the waiver of lost profits, in the event the agreement or fee is contested or the advance agreement not to contest, but to pay, any parking ticket), NOAB has attempted to regulate other portions of the plaintiffs’ business in the guise of contracting for the “permit fee.”
Additionally, LSA-R.S. 2:605(D) specifically forbids the fees from having the effect of substantially lessening competition and mandates that the fees be based on cost to the airport of the particular facilities or services used by the offsite RAC. The enabling ordinance of the New Orleans City Council, especially in the particulars cited above, obviously exceeds both those statutory limits. For instance, the ordinance, while purporting to give regard to the property and improvements used, also attempts to prevent on-site RACs from moving to off-site locations. This requirement appears to violate the prohibition against substantially lessening competition.
More obviously and specifically, the fees are fixed “... to retire debts incurred ... pay for the operation and maintenance of Airport facilities; pay for acquisition and maintenance of Airport equipment; protect the public; preserve order; provide for the public health, safety and welfare, and enhance the welfare of the Board ...” The basis of the fees as outlined above go much further than the statutorily imposed basis of LSA-R.S. 2:605(D), cited hereinabove which is the cost to the airport of the particular facilities — not the general “debts” or general airport facilities, or “enhancement of the welfare of the board.”
It is well settled that a municipality is without authority to enact ordinances which are inconsistent or in contravention with state law. Lentini v. City of Kenner, 252 La. 413, 211 So.2d 311 (1968); Restivo v. City of Shreveport, 566 So.2d 669 (La.App. 2 Cir.1990). In Bourgere v. Anzelmo, 517 So.2d 1121 (La.App. 5 Cir.1987), a panel of this Court found that where an ordinance conflicts with state statutory law, injunctive relief is clearly the proper remedy citing Lentini, supra. As clearly demonstrated above, the enabling ordinance and its consequent progeny, the “Agreement,” obviously conflict with state law, and the proper remedy under Lentini and Bourgere, supra, is injunctive relief the avenue plaintiffs were entitled to pursue and did pursue.
Since the ordinance in its present form is subject to being enjoined, it follows that the attempted implementation of the ordinance by the NOAB, the “Agreement,” is also subject to that remedy.
Additionally, in Frommeyer v. St. Charles Parish, 444 So.2d 714 (La.App. 5 Cir.1984), the parish council was accused of certain “ultra vires” acts in passing ordinances for bids, and private firms raised questions under the constitution, the Loui *227 siana Revised Statutes, and the Home Rule Charter for St. Charles Parish. There we said:
Plaintiffs alleged in the verified petition that the effect of the alleged ultra vires acts of the Council, the implementation of the contracts with defendants, would be to destroy their businesses and adversely affect their income. We find no manifest error or abuse of discretion in the trial judge’s holding with reference to the injunction. The irreparable injury requirement for the preliminary injunction was satisfactorily met by the affidavits and verified petition of plaintiffs that the businesses of plaintiffs would be destroyed or permanently substantially reduced unless the injunction was granted.
In the case before us affidavits were introduced by Thrifty and Superior that their businesses would be destroyed or substantially reduced as a result of the imposition of the agreement. Therefore, an additional basis for the preliminary injunction, that of irreparable injury, has been met, as discussed and outlined in Frommeyer, supra.
“The trial judge in a preliminary injunction hearing has great discretion to grant or deny the relief. Our review is limited to whether the trial court abused its discretion in this regard.” Federal Nat. Mortg. Ass’n, supra.
Because plaintiffs have made a prima facie showing that the enabling ordinance exceeds the statutory authority granted in LSA-R.S. 2:605(D); and the resultant agreement which NOAB seeks to enforce exceeds even the enabling ordinance, as well as the statutory authority; and because plaintiff has also made a showing of irreparable injury because of the threat of destruction or substantial reduction of their businesses, we hold that the trial court correctly issued a preliminary injunction against the defendants, pending trial on the merits, and find no abuse of discretion.
Because of the above holding, we deem it unnecessary to address whether or not the fee is an illegal tax. A final determination on this issue may be made at the trial on the merits for the permanent injunction. In addition, since we have already found two perfectly legitimate bases for the issuance of the preliminary injunction, we find it unnecessary to discuss the host of other issues raised by the parties as irrelevant.
For the foregoing reasons, the order granting a preliminary injunction, against appellants is affirmed and the NOAB is taxed with all costs of this appeal.
AFFIRMED.

1. Chapter 4, Article 1 of the Code of the City of New Orleans, Section 4-12.1 provides as follows:
The New Orleans Aviation Board shall have the fullest power, authority and responsibility permitted by the Home Rule Charter of the City, consistent with ordinances heretofore adopted and with its contractual obligations with airline lessees of New Orleans International Airport (Moisant Field), to:
(1) Administer, operate and maintain all municipal airports and aviation facilities;
(2) Represent the city in all technical matters pertaining to aeronautics, in consultation with state, national or international aeronautic offices or agencies. M.C.S., Ord. No. 680, Section 1, adopted 4-19-56; M.C.S., Ord. No. 2348, Section 2 adopted 12-21-61.
Section 4-12.2 provides:
In the carrying out of its rights, duties and responsibilities such board, acting through its proper officers, shall have full power to execute contracts and grant concessions appertaining to airport property and operations, which contracts and concession grants, when duly executed by such Board, shall be binding upon and represent commitments regarding the same on the part of the city. M.C.S., Ord. No. 680 Section 2, adopted 4-19-56. (emphasis supplied).
Section 4-12.7 provides:
The Council hereby authorizes and approves the delegation by the Director of Finance to the Board of the functions of collecting all revenues described in preceding section and awarding all concessions located on property of the city which is dedicated to airport or other aviation purposes. M.C.S., Ord. No. 680, Section 8, adopted 4-19-56.