WICKER, J.,
dissenting in part.
1U agree with the majority insofar as the majority affirms that portion of the judgment denying Bayou Fleet Partnership’s *222 request that it be granted a right of access across the plaintiffs’ property. However, I respectfully dissent from that part of the opinion which affirms the portion of the trial court judgment dismissing Bayou Fleet Partnership’s intervention. In my view, the majority errs in affirming the judgment in its entirety.
The majority views the 1999 partition as determinative of the ownership of the disputed tract. The majority concludes that the Clulees, by that judgment, obtained 100% of the rights allotted to that tract, which included ownership of the adjacent 25-foot strip of batture land. I disagree for the reasons that follow.
Bayou Fleet argued it owns a two-thirds undivided ownership interest in the Southern twenty-five feet of the roadway because in 1992 when the Parish revoked public use of the road, the ownership reverted to the present owner of the land that was contiguous to the road. Bayou Fleet argued that it had that ownership interest, as the successor in interest to the owners of the adjacent property at the time of the Parish revocation. The Clulees and Homeplace disagreed because, among other things, there was no act in the 12chain of title that included a description of the road and the ownership of the roadbed was previously declared as owned by the Giambellucas and the Clulees.
The testimony and evidence at trial, along with prior litigation to which the trial judge took judicial notice, revealed the following:
On May 19, 1992, the St. Charles Parish Council adopted an ordinance whereby the Parish revoked and abandoned the Extension of Morgan Street, which had been a public road. The road ran from La. Highway 18 (River Road) to the Mississippi River. At the time the Parish revoked the road, the Giambellucas owned the property North of the road. The Clulees and Salvador Saia owned the property South of the road, known as the Rivarde Tract. The Clulees owned a two-thirds undivided interest in the Southern property, while Saia owned a one-third undivided interest.
Robin Blair Durant, Bayou Fleet’s managing partner, testified that he is an owner of Bayou fleet Partnership. Louisiana Materials Co., Inc. was a family-owned corporation. On Februai'y 14, 1989, Louisiana Materials was granted a judgment against several other defendants, including Neal Clulee. As a result of that judgment, in January 1993, the Clulees’ undivided two-thirds interest in the Mississippi River batture property South of the Morgan Street Extension was sold at a Sheriffs sale to Louisiana Materials Co. Inc. The Saia family had the other one-third undivided interest in that property. A few months later in 1993, Bayou Fleet purchased from Louisiana Materials the two-thirds undivided interest in the Rivarde Tract.
Mr. Durand testified that Bayou Fleet attempted to reach an agreement with the Saias regarding reimbursement to Bayou Fleet for taxes, and maintenance of the property. No agreement was ever reached and the Saias were not interested in selling their portion or in purchasing Bayou |aFleet’s portion. As a result of the breakdown in communication, and the failure to resolve the dispute, Bayou Fleet filed suit against the Saias seeking to sell the undivided property at a public auction in order that one person own the property.
But, in 1996, before the suit was tried, Mr. Saia became ill and the Saias sold their undivided one-third interest to Homeplace Batture Leasing, Inc. Neal Clulee, as president of Homeplace, represented Homeplace at the sale transaction. Ultimately, the matter was tried. At the district court level, Bayou Fleet was sue- *223 cessful in arguing that the property should be divided by licitation. On appeal, this court reversed and remanded the matter to the district court. Bayou Fleet Partnership v. Saia, 98-306 (La.App. 5 Cir. 2/5/99), 745 So.2d 629, writ denied, 99-0459 (La.4/1/99), 742 So.2d 559.
In that opinion, this court recited the history of the litigation:
On February 12, 1996, Bayou Fleet filed a petition to have the property partitioned by licitation. On May 22, 1996, Home Place Batture Leasing, Inc. (hereinafter Home Place) purchased the Saia family’s one-third (1/3) interest in the land for $23,000.00. On June 11, 1996, Home Place intervened in the suit, praying that the property be partitioned in kind. The Saia family was later dismissed from the suit.
98-306 at 2, 745 So.2d at 629.
The court explained:
The trial judge ordered that the property be partitioned by licitation and sold at public auction by the Sheriff, with costs of these proceedings assessed against the gross proceeds of the sale. The trial judge ordered partition by licitation because he concluded that the best use for this property is barge fleeting and that the possibility of Home Place getting the middle lot existed since the selection process must be random. Thus, he concluded that the property could not be conveniently divided and that division would result in a diminution of the property’s value.
98-306 at 5, 745 So.2d at 631.
|4This court reversed the judgment of the trial court, ordered that the property be partitioned in kind, and remanded the matter to the district court for further proceedings. 98-306 at 8, 745 So.2d at 632.
The trial judge then rendered a judgment on June 2, 1999 after conducting a random lot selection process. He divided the lots as A, B, and C. He flipped a coin to determine who would choose first. As a result, Homeplace chose first. Bayou Fleet was declared owner of Lots B and C and Homeplace owner of Lot A as indicated by the attached Appendix. The oumership of the Morgan Street Extension was not addressed in that judgment.
The first time that ownership was addressed was in February 2000, when the 29th Judicial District Court trial judge rendered a declaratory judgment dividing the ownership of the Morgan Street Extension. The court recognized Mary and Neal Clulee as owners of the Southern one-half (25 feet) of the property from the riverside toe of the Mississippi River Levee to the Mississippi river. The court further declared that Nicholas P. Giambel-luca and Michael J. Giambelluca were the owners of the Northern one-half (25 feet). The Giambellucas appealed the judgment asserting that they owned the entire roadbed between their batture properties. Clulee v. Giambelluca, 00-1057 (La.App. 5 Cir. 1/23/01), 777 So.2d 1259. This court affirmed the judgment.
Mr. Durant testified that when Bayou Fleet discovered that there was a potential claim for ownership of the road, they attempted to intervene in that suit. However, testimony had been received at that point and the trial judge denied the request to intervene. A supervisory writ was denied by this court without reasons. Clulee v. Giambelluca, 00-108 (La.App. 5 Cir. 2/18/00) (unpublished). According to the appellate opinion, the trial judge | .^rendered judgment declaring ownership on February 18, 2000, the same date as this court’s writ denial. Clulee v. Giambelluca, 00-1057 at 7, 777 So.2d at 1263. Thus, it appears that the intervention was untimely filed. In any event, Bayou Fleet was not a party to the suit for a declarato *224 ry judgment regarding ownership of the Morgan Street Extension.
Mr. Durant explained that the instant suit was the first opportunity Bayou Fleet had to assert its ownership interest in the road.
At trial, Ms. Clulee, Mr. Clulee’s wife, testified she was married to Mr. Clulee at the time they acquired an ownership interest in the Rivarde Tract. Homeplace is a company that is owned by the Clulees. In her opinion, she and her husband asserted an ownership interest in the Morgan Street Extension in litigation involving the Giambellucas on the basis that they were adjacent property owners at the time of the revocation and also because they became the owners following the judicial partition when they were awarded lot A.
Albert S. Cote, a title abstracter, testified as an expert in title examinations and real estate. He performed a title examination of the Morgan Street Extension in 2007. The writ of seizure did not include a legal description of the Morgan Street Extension, which is the bounding piece of property. The sale from Louisiana materials to Bayou Fleet did not include the extension. Only the Rivarde property was described in the Sheriffs sale. The sale from Saia to Homeplace did not mention the extension. It only mentioned the Ri-varde property. In the conveyance records, the extension is not legally described anywhere. Before the 1992 revocation, Louisiana Materials had a lien on the Clu-lees’ property — the Rivarde tract. Mr. Cote, has had experience with revocations of public roads. Sometimes the revoked roads are described in sales and sometimes they are not.
| ¡¡The evidence at trial revealed that although there have been numerous transfers of the Rivarde Tract, which is adjacent to the Morgan Street Extension, the Morgan Street Extension was never included in any legal description on acquisition documents, including documents concerning the Sheriffs sale to Louisiana Materials. Additionally, when the Clulees filed for bankruptcy in 1992 about four months after the Parish’s revocation, they did not list among their assets an ownership interest in the Morgan Street Extension.
La. R.S. 48:701 pertinently provides:
The parish governing authorities ... of the state ... may revoke and set aside the dedication of all roads, streets, and alleyways laid out and dedicated to public use within the respective limits, when the roads, streets, and alleyways have been abandoned or are no longer needed for public purposes.
Upon such revocation, all of the soil covered by and embraced in the roads, streets, or alleyways up to the center line thereof, shall revert to the then present owner or owners of the land contiguous thereto[.]
Therefore, at the time of the Parish revocation, the Morgan street Extension reverted to “the then present owner or owners of the land contiguous thereto.”
As a result of the revocation, the road again became part and parcel of the property from which it had been originally carved and the ownership then became vested in accordance with the ownership of the property contiguous thereto at the time of the revocation. Martin v. Fuller, 214 La. 404, 422, 37 So.2d 851, 857 (La.1948).
It is undisputed that at that time, the Clulees, Giambellucas, and Saia owned the contiguous property. The Giambellucas owned the property North of the road while the Clulees and Salvador Saia owned the Rivarde Tract, which was property South of the road. The Clulees owned a twojthirds7 undivided interest in the *225 Southern property, while Saia owned a one-third undivided interest. Pursuant to R.S. 48:701, the ownership of the road vested as follows: The Giambellucas acquired the Northern twenty-five foot tract and the Clulees together with Saia acquired the Southern twenty-five foot tract. The Clulees acquired a two-thirds interest in the Southern tract with Saia acquiring the remaining one-third interest.
The parties disagree, however, as to whether Bayou Fleet subsequently acquired an interest in the Southern twenty-five feet of the former Morgan Street Extension. The trial judge concluded that since the sale and acquisition documents did not contain a description of the Morgan Street Extension, Bayou Fleet never acquired ownership.
Appellant argues the trial judge erred because the presumption of transfer provided in La. R.S. 9:2981 governs and, therefore, the interest in the abandoned road was transferred along with the Clu-lees’ ownership interest in the Rivarde Tract. I agree that the trial judge erred in failing to apply the presumption.
La. R.S. 9:2981, which was added in 1958, provides for a conclusive presumption of the grant of interest in an abandoned road:
It shall be conclusively presumed that any transfer, grant, sale or mortgage of land and property abutting or contiguous to an abandoned road, street or alley, the dedication of which has been revoked, shall be held, deemed and construed to include all of grantor’s or mortgagor’s interest in and to said abandoned road, street, or alley, in the absence of any express provision therein particularly excluding the abandoned property therefrom; provided further, however, that no then existing valid servitude or rights of third parties in or on the abandoned property shall be in any manner or to any extent impaired, prejudiced, or otherwise affected by any of the terms and provisions of this Part.
1 ^Appellees argue, however, that jurisprudence interpreting a similar provision, La.R.S. 9:2971, does not support a presumption that the Clulees’ interest in the abandoned road was ever transferred. Bayou Fleet disagrees.
R.S. 9:2971[1] provides:
It shall be conclusively presumed that any transfer, conveyance, surface lease, mineral lease, mortgage or any other contract, or grant affecting land described as fronting on or bounded by, oí-as described pursuant to a survey or using a metes and bounds description that shows that it actually fronts on or is bounded by a waterway, canal, highway, road, street, alley, railroad, or other right-of-way, shall be held, deemed and construed to include all of grantor’s interest in and under such waterway, canal, highway, road, street, alley, railroad, or other right-of-way, whatever that interest may be, in the absence of any express provision therein particularly excluding the same therefrom; provided, that where the grantor at the time of the transfer or other grant holds as owner the title to the fee of the land situated on both sides thereof and makes a transfer or other grant affecting the land situated on only one side thereof, it shall then be conclusively presumed, in the absence of any express provision therein particularly excluding the same therefrom, that the transfer or other such grant thereof shall include the grantor’s interest to the center of such waterway, canal, highway, road, street, alley, railroad, or other right-of- *226 way; provided further, however, that no then existing valid right-of-way upon, across or over said property so transferred or conveyed or so presumed to be conveyed and no warranties with respect thereto shall be in any manner or to any extent impaired, prejudiced, or otherwise affected by any of the terms and provisions of this Part or because of the failure of such grantor or transferror to therein make special reference to such right-of-way or to include or exclude same therefrom.
In Crown Zellerbach Corp. v. Heck, 407 So.2d 770, 773-74 (La.App. 1 Cir.1981), a case involving mineral rights, the First Circuit interpreted the phrase “described as fronting on or bounded by” in R.S. 9:2971 and found that the presumption did not apply in that case. In Crown, the property description in the deeds did not describe the property as “fronting on or bounded by” the highway or right-of-way. The court held that the omission evidenced the intent to convey only the property included within the exact 19and precise limits of the surveyed description. It concluded that a survey that excluded the contiguous land satisfies the express reservation requirement.
Crown interpreted the pre-2003 version of the statute. In 2003, the legislature amended the statute to provide for other means of describing the property.[2] The legislature added: “or as described pursuant to a survey or using a metes and bounds description that shows that it actually fronts on or is bounded by” before the phrase “a waterway, canal, highway, road, street, alley, railroad, or other right-of-wayf.]”
All of the subsequent transfers to Louisiana Materials and then to Bayou Fleet contain a metes and bounds description that shows that the Rivarde Tract is bounded by Morgan Street. There is no express provision that particularly excludes the road. Thus, even assuming that R.S. 9:2971 applies to this situation, the presumption applies.
The Clulees also argue that La.R.S. 13:3851 provides that Sheriffs sales are sales per aversionem. As such, Louisiana Materials only acquired the property that was specifically described in the writ of seizure and sale.
La.R.S. 13:3851 pertinently provides:
Whenever a party to an action or proceeding desires to have the sheriff to whom a writ of attachment, sequestration, distringas, fieri facias, or seizure and sale is directed make a constructive seizure of any immovable property, whether vacant or improved, under the provisions of R.S. 13:3851 through 13:3861, the party shall annex to the writ at the time of its issuance, or deliver to the sheriff to whom the writ is directed, an exact and complete description of the immovable property to be seized.
Appellees rely on Cornish v. Kinder Canal Co., 267 So.2d 625, 629 (La.App. 3 Cir.1972), writ denied, 263 La. 624, 268 So.2d 679 (La.1972), 10application not considered, 263 La. 800, 269 So.2d 248 (La.1972) for its holding that in a sale of immovable property by certain bounds or limits, the vendee receives all of the land embraced within those limits, and nothing more. But in that case, the court could not rely on the presumption in R.S. 9:2971 because the act was retroactive. 267 So.2d at 631.
Pursuant to R.S. 9:2981, the Sheriffs sale conveyed the additional interest in the *227 Morgan Street Extension to Louisiana Materials because there was no “express provision therein particularly excluding the abandoned property therefrom.”
Likewise, Bayou Fleet acquired the Clu-lees’ former two-thirds undivided interest in the Rivarde Tract from Louisiana Materials with no express provision excluding the abandoned property. Therefore, Bayou Fleet rather than the Clulees own an undivided two-thirds interest in the Southern twenty-five feet of the Morgan Street Extension.
I disagree with the majority that the 1999 partition judgment determined ownership of the disputed property. It was not until 2000 that the ownership interest in that property was ever addressed. Although the 2000 judgment declared the Clulees and the Giambellucas to be the owners of the road, Bayou Fleet was not a party to those proceedings and until the instant proceeding has never had its ownership claim considered on the merits. In Law Offices of Robert M. Becnel v. Ancale, 00-295 (La.App. 5 Cir. 9/26/00), 769 So.2d 761, 763-64, this circuit addressed a similar situation. In that case, an attorney had originally intervened to assert an interest in attorney’s fees and costs. The court had dismissed the intervention without ruling on the merits. Ancale held that the former dismissal of the intervention could not serve as the basis for maintaining a Inplea of res judicata in the subsequent Ancale case. 769 So.2d at 764. Therefore, to the extent that appellees rely on the 2000 judgment, that reliance is misplaced.
For these reasons, I respectfully dissent from that portion of the opinion which affirms the judgment dismissing Bayou fleet’s intervention. I would reverse that portion of the trial court judgment of December 14, 2007 dismissing Bayou Fleet Partnership’s intervention; render judgment declaring that Bayou Fleet Partnership is the owner of an undivided two-thirds interest in the Southern twenty-five feet of the property comprising the Morgan Street Extension, and remand this matter for further proceedings.
*228 [[Image here]]

. Added by Acts 1956, No. 555, § 1. Amended by Acts 2003, No. 723, § 1.

. As amended by Acts 2003, No. 723, § 1.